.Judge Underwood
delivered the opinion of the court.
Morrow, claiming under a junior patent, instituted an action of ejectment and recovered. ■His right depends upon the fact, whether he had 20 years continued adverse possession, under the junior grant, within the interference prior to the entry of Morrow. This question is made upon the evidence in a motion for a new trial, which the circuit court overruled, and is the first which we shall dispose of.
Morrow claims under Trimble, the junior patentee. The suit was commenced in 1820. According to the evidence, Morrow settled on the tract of Trimble, who was his father-in-law, on the outside ■of the lines of the elder patents, in the year 1797, and in the year 1798, extended his enclosure within the boundary of the elder grants. It does not appear how far Morrow was authorized to take possession by his father-in-law. The nature and extent of the contract between them, is not shewn. Trimble, conveyed to Morrow, in 1802. Prior to that *443 time, Morrow held as Trimble’s tenant, and having entered within the lap in 1798, by actually enclosing part thereof, it may be inferred, that Trimble, the patentee, was in actual possession of his entire tract, before'he conveyed part thereof, in 1802, to Morrow, and thus connecting the. possession of Trimble, acquired by the entry of his tenant, Morrow, with the possession of the latter, under his deed, and more than 20 years continued adverse possession, will be established, prior to the institution.of the action.
°f ejeotmenr may operate possossi.sn'of an interference-
It is contended, however, that the following.facts shew, that Morrow surrendered all pretensions to an adverse possession of the land, in contest, as far back as 1808. In that year, Morrow went to Weathers Smith, who claimed the land under the eider patents, and contracted with.him for 59 acres , including all the enclosures made by him. Morrow as a surveyor, laid off the 59 acres, and the sons of W. Smith'carried the chain.. W. Smith executed a bond to Morrow for the conveyance of the title. After this was done, Morrow, on several occasions, to different persons, acknowledged-that the land on the out side of the 59 acres, and within the interference, was Smith’s, and that he had no right to take timber from it, and assigned that as a reason why he was hauling timber from places more remote to make improvements.
Weathers Smith executed a deed to the appellant, in December, 1813, purporting to convey to him the land in controversy, and much more. The appellant settled on the out side of the interference, but in 1815, extended his fence, at one place, a small distance across Trimble’s patent line, within the lap, and in 1817, at the latest, he enclosed aspring withifij^ie interference, claiming the land according to his deed, which binds on the 59 acres which W. Smith had contracted to- Morrow as- aforesaid. It moreover appears that Morrow, as the surveyor, laid off the land to enable W. Smith to convey it to his son, the appellant, and that he set up no claim to it at that time. It also appears in proof, that he wished to exchange other lands with the appellant for those in contest.
An adverse possession (Aaúged by the agreement of the partie», fr*e".d' tho operation of the statute °h reb bjg0ns feateeb
Grantor in a deed is com-prove its°exe cution, so far as his title has passed by it, or in other words, so far cerned ?n°its' execution.
. The foregoing facts, all of which seem to be unopposed by any contradictory evidence, do, in our opinion, show conclusively, that Morrow voluntarily restricted his possession within the interference to the 59 acres contracted for with W, Smith in 3808, and that his conduct from that period until the institution of this suit, clearly manifested an abandonment of the possession to the residue of the interference, in favor of the elder grants. Under these circumstances, the extension of the fence across the line of Trimble’s patent in 1815, and the enclosure of the spring in 1817, were such acts of entry on the part of the appellant, as gave him the possession in fact, of the land described in his deed of 1813. It follows that the plaintiff had no right to recover upon his possession against the elder patents, and that the court should have granted a new trial, the verdict being contrary to law and evidence.
The case of Mill’s heirs and Dale vs. Bodley, IV. Mon. 248, shows that an adverse possession may be changed by the agreement of the parties, into a friendly one, and the operation of the statute of limitations thereby defeated. It would hardly be contended that Morrow, after contracting with \Y. smith lor the 59 acres, and accepting his bond tor a title, could insist upon an adverse possession to that parcel. We see just as little reason, under all the facts proven, to tolerate an adverse possession to the residue of the interference, which he did not bargain for, and on which he had no improvement.
There are some other questions presented «which we shall notice, as the cause must be remanded for a new trial.
In the progress of the trial in the circuit court, the grantor in a deed to which there was a subscribwitness, was not permitted to prove the execution of tlie deed because the subscribing witness was not called, and his absence not accounted for. The genera* ru*e ^ that whenever the execution of an instrument is called in question, the subscribing witness must be produced. But notwithstanding this ru*e’ we are oí ofJinl0rb that the grantor in this case was competent to prove the execution and delivery *445 of the deed, which the court rejected, so far as his title and interest had passed; or in other words, so far as he was concerned. But in respect to his co-grantors, he was not a competent witness, for they inisht have executed the deed when he was not pro-sent, and as to their execution oi-it, lie is not nec.essarily presumed to have any knowledge. The product ion of the subscribing witness is indispensable, if within the power of the court, when the deed is denied.by the party executing it. That was the case in MdVIuvtry and Peebles vs. Frank, IV. Monroe, 40. But where the grantor or obligor instead of denying, affirms the deed which divests him of an estate or right, we can perceive no possible reason why he should not be permitted to prove, that he had executed the instrument parting .with his estate or right. The very reason why a witness is necessary in any case, results from the" possibility that thfe grantor or obligor may deny the deed. is to fortify the grantee and to enable him to counteract the effects of such a denial, that a witness is called to subscribe the deed. Were it always certain that grantors would, when necessary, go forward and acknowledge and prove the execution of deeds a subscribing witness would be altogether useless.
Bat one grar.ioris ”ot,, s,rovD u,e ex„ ecution of a vuicr'i cantor acknowledge? tho execution .^yand* willing to be , a witness to Provo 'C !l IS to prove its execution by J-lie fi;hscnb-.'
We shall notice but one point more. In the agreement before the jury, the attorneys made a question as to the time when Morrow’s adverse possession commenced. Smith’s council appealed to the court to instruct the jury, that cutting 'of house logs or other timber within the interference, was not such possession as to justify the jury in fixing the lime when the limitation began to run at the date of cut - ting timber; and moreover, that to constitute an adverse possession, there must be an actual enclosure or residence within the interference. The court refused to gi ve the instructions asked for, but told (lie jury that c‘an actual enclosure or residence upon the land, to take possession, was not required by Jaw; and that the jury had a right to date Morrow’s possession from the time he manifested an intention to clear and use the land as his own land.”
Before (he ritrlit of the ehloi patentee to enter upon the land is tolled, there must be 20 years advene possession in fact.
Statute of ^“osn^tTm mence'Viin-11' ning from time tin indifósts ai^níeñtion to clear and use lamí as las own.
Before the right of the elder patentee to enter upon the land is tolled, there must be twenty years adverse possession in fact. Now, an entry upon land and cutting timber, may be altogether tortious, but it is still such an use of land as the real owner is accustomed to make of it, and therefore such an act may, in the general, be regarded as manifesting an intention to-use the laud as the trespasser’s own. If such acts of ownership were continued occasionally, at short intervals, for twenty years, they would not confer such an adverse possession upon the trespasser, as would enable him to rely on the statute of limitations.
Neither can the statute of limitations, with proPr*ety’ sa‘^ commence running from the time an individual manifests an intention to clear and use land as his own. There are various modes of manifesting an intention todo a thing. Words alone c'o that; and there are actions performed by individuals which frequently manifest intentions to do things even contrary to their declarations. A man Ii)ay manifest an intention to clear and use laud-as his own, and yet never enter upon it; casualty or a second thought may induce him to after his intentions and abandon a project fully resolved on. In such a case it would be strange to apply the statute of limitations in his favor, and after a lapse Of twenty years, authorize him to maintain an action of ejectment and evict the possessor. We therefore, regard the language of the court as altogether too indefinite. It wants that precision and clearness which should always be aimed at in giving instructions to a jury. The statute commences running according as facts do, or do not, exist, and not as this or that intention may have been manifested. The fact upon which the bar of twenty years rests is an. adverse possession. Before the junior patentee can-acquire such a possession, we deem it essential that he should have entered upon the interference and commenced an improvement of a permanent character, if it be woodland in the wilderness state, and carried on the improvement begun by continued acts until it shall be completed. If an improvement so made shall be enjoyed until there is twenty years *447 complete, from the date of such an entry, then the statute may be applied from the date of the entry and commencement of tile work; but occasional chopping within the interference, and carrying away timber, will not do. Under this view, neither the instructions asked, nor those given, meet our approbation.
An entry with ai, intention to p ‘SSÜIS, made by n junior patentee within the lap, is not sufficient to confer such a possession as will start the statute of limitation to running, unless it be accompanied by a continued holding from that time, demonstrated by acts ripening into improvements made upon the interference.
Read, for appellant; JVIorehcad and' .Broten, for appellee.
We go back to the time of beginning the work which is completed by an actual enclosure, provided the work is prosecuted with reasonable diligence until finished. Thus if the junior patentee shall enter on the lap in January, and continue to clear ,until April, when he encloses the ground, we should fix on January as the time when the statute commenced running, instead of April. Upon another :rial, it cannot be difficult to make the instructions given, conform to our views of the law, when applied to the facts of the case. •
The intention with which an entry is made upon land, is often an important matter, and the facts proving or manifesting such intention are often legitimate subjects of investigation before the court and jury. But an entry with an intention to possess, made by a junior patentee within the lap, is not sufficient to confer such a possession as will start the statute of limitations, without it be accompanied by a continued holding from that time, demonstrated by acts ripening into improvements made upon the interference. Removing timber cut within the interference to improve land without, is a very different matter, and too equivocal to make the foundation of a possession in fact. Such use of timber gives no seizin, as was decided in the case of Smith &c. vs. Morrow, V. Litt. 216.
Judgment reversed, with costs, and cause remanded for a new trial.